

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| SUSAN GOEHRING,<br><br>Plaintiff,<br><br>vs.<br><br>CAMPBELL COUNTY BANK,<br><br>Defendant. | 1:21-CV-1030-CBK<br><br><br><br>**MEMORANDUM AND ORDER** |

## I.    **BACKGROUND**

Defendant Campbell County Bank ("defendant," "Bank") moved on December 22, 2021, to partially dismiss the complaint brought by its former employee, Ms. Susan Goehring ("plaintiff"). Doc. 9. Ms. Goehring responded to the defendant's motion on January 12, 2022. Doc. 11. With its reply filed on January 26, 2022, this matter is ripe for adjudication. Doc. 15.

Goehring asserts she was fired in December 2020 from her position at the Bank, where she has worked since 1988, because of her sex and age. At 57-years-old, the plaintiff was one of the longest tenured employees at the Bank, and one of its oldest. She brings before this Court allegations surrounding disparate treatment against female employees, as well as against older staff members. This ranged from missives such as calling female employees "the girls" to inappropriate stereotypes percolating in the office culture. Further, the plaintiff maintains older employees would be pressured to retire and be treated as second-class staff compared to younger employees. Because of her alleged challenges to this office culture of sex and age-related discrimination, which went unanswered, Ms. Goehring asserts she was retaliated against through removal of job

duties, a reduced annual bonus compared to younger male employees, and the ultimate punishment: termination.

While on approved medical leave in December 2020, Goehring was served by an officer from the sheriff's office with a notice demanding resignation by December 31, 2020. If she refused, she would be terminated. Goehring refused and was accordingly fired. Subsequently, the plaintiff notes, the Bank refused to process her 401k request in a timely manner, leading to a difficult delay in accessing her 401k funds as well as issues pertaining to her health and long-term care insurance. Additionally, Goehring claims that the Bank provided false information to the state agency processing reemployment claims, failed to advise the agency that it had requested plaintiff's resignation, and other attempts to prevent her from receiving properly owed reemployment benefits. On October 22, 2021, Ms. Goehring filed suit against the Bank alleging: (I) sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); (II) reprisal in violation of Title VII; (III) age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"); and (IV) reprisal in violation of the ADEA. Doc. 1.

Matters of discrimination and retaliation fall under an administrative regime that must be adhered to before filing suit in this Court. First, a plaintiff such as Ms. Goehring will file an intake questionnaire with the appropriate state or federal agency listing the alleged allegations of workplace discrimination and retaliation and will subsequently receive a "charge." After receiving a charge, as was done here, the Equal Employment Opportunity Commission ("EEOC") may offer a plaintiff a Notice of Right to Sue. Once this has been provided, plaintiffs such as Goehring may bring suit in federal court. The Bank argues that the administrative demands of Title VII and the ADEA were not adhered to by plaintiff, and thus her claims should be partially dismissed. Specifically, the defendant argues: (1) Goehring failed to administratively exhaust her sex and age-based retaliation claims; (2) that the plaintiff's discrimination charges fail to the extent they are based on alleged adverse actions other than discharge, specifically taking issue with allegations of discrimination based on adverse compensation, adverse privileges,

2

and failure-to-promote; (3) plaintiff failed to properly exhaust the charges focused on adverse terms and conditions of employment; (4) any failure to present a claim below at the administrative level cannot be cured by filing a new charge; and (5) that even when taken as true, Goehring's alleged transgressions do not rise to the high threshold of "adverse employment actions." DEFENDANT'S PARTIAL MOTION TO DISMISS, doc. 9 at 3–12.

     While most of plaintiff's claims survive this early stage of litigation, some must be discarded due to failures of proper administrative exhaustion.

## II.   **DISCUSSION**

### A. <u>Legal Standard</u>

     When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court assumes that all facts in the complaint are true and construes any reasonable inferences from those facts in the light most favorable to the nonmoving party. <u>Delker v. MasterCard Int'l, Inc.</u>, 21 F.4th 1019, 1024 (8th Cir. 2022) (*citing* <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 550 (2007)); <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). "In deciding a motion to dismiss, courts ordinarily do not consider matters outside the pleadings." <u>Gillick v. Elliott</u>, 1 F.4th 608, 610 n.2 (8th Cir. 2021). However, courts may "consider materials that are part of the public record or do not contradict the complaint, and materials that are 'necessarily embraced by the pleadings.'" <u>Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.</u>, 951 F.3d 952, 955 (8th Cir. 2020) (*quoting* <u>Porous Media Corp. v. Pall Corp.</u>, 186 F.3d 1077, 1079 (8th Cir. 1999)). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Smith v. S. Farm Bureau Casualty Ins. Co.</u>, 18 F.4th 976, 979 (8th Cir. 2021) (*quoting* <u>Iqbal</u>, 556 U.S. at 662). The factual allegations must be enough to raise specificity "'above the speculative level.'" <u>Richardson v. BNSF Ry. Co.</u>, 2 F.4th 1063, 1068 (8th Cir. 2021) (*quoting* <u>Minn. Majority v. Mansky</u>, 708 F.3d 1051, 1055 (8th Cir. 2013)). In addition, the factual contents of the complaint must allow the Court "'to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" <u>Meardon v. Register</u>, 994 F.3d 927, 934 (8th Cir. 2021) (*quoting* <u>Iqbal</u>, 556 U.S. at 678).

Nevertheless, courts "'are not bound to accept as true a legal conclusion couched as a factual allegation.'" Stoebner v. Opportunity Fin., LLC, 909 F.3d 219, 225–26 (8th Cir. 2018) (*quoting* Iqbal, 556 U.S. at 678). When assessing the merits of a complaint challenged under Rule 12(b)(6), a court should "'begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" McDonough v. Anoka Cnty., 799 F.3d 931, 945–46 (8th Cir. 2015) (*quoting* Iqbal, 556 U.S. at 679).

## B. Whether Any of Goehring's Claims are Administratively Exhausted

The critical inquiry here is what this Court can consider for purposes of administrative exhaustion. Before filing suit in federal court, plaintiffs alleging violations of federal discrimination statutes must first file their complaints with the EEOC. Sellers v. Deere & Co., 791 F.3d 938, 943 (8th Cir. 2015). See 42 U.S.C. §§ 12117(a), 2000e-5(e)(1); 29 U.S.C. § 626(d)(1). This Court may only consider Goehring's claims once they have been exhausted through the administrative process with the EEOC. Weatherly v. Ford Motor Co., 994 F.3d 940, 944 (8th Cir. 2021).

First, Ms. Goehring must, and did, file an intake questionnaire with the EEOC alleging her instances of discrimination by the Bank. Next, the EEOC provided Goehring the necessary charge, listing her specific allegations of abuse. The agency's error on translating plaintiff's list of claims from the questionnaire to the charge is at the core of this matter. Finally, only after the charge has been signed and notarized by the plaintiff, the EEOC may provide a Notice of Right to Sue to the party if it elects not to bring a civil suit or enter into a conciliation agreement with the employer, so that she may then commence a suit on those exhausted claims. 42 U.S.C. § 2000e-5(f)(1); 29 U.S.C. § 626(e). These administrative remedies stand so that the EEOC is offered the "initial opportunity to investigate allegations of employment discrimination and to work with the parties toward voluntary compliance and conciliation." Parisi v. Boeing Co., 400 F.3d 583, 585 (8th Cir. 2005).

Ms. Goehring's intake questionnaire to the EEOC clearly asserts her factual allegations pertaining to both instances of workplace sex and age discrimination, as well

4

as retaliation because of plaintiff's challenges to alleged age-based discrimination.  See
INTAKE QUESTIONNAIRE, doc 14-1 at 6, 7 (signed on February 21, 2021).  On her actual
charge, the EEOC checked the box for "Retaliation" as well as for "Sex" and "Age"
discrimination.  CHARGE, EEOC FORM 5, doc. 9-1 (signed on March 1, 2021).  However,
crucial to this Motion to Dismiss, the actual four listed "charges" do *not* provide
assertions of retaliation-based discrimination.  The charge, not the intake questionnaire, is
forwarded to the employer.  See generally Diez v. Minn. Min. & Mfg. Co., 88 F.3d 672,
676–77 (8th Cir. 1996) (explaining that when EEOC treats intake questionnaire to be
"preliminary, it does not notify the employer of the charge.").  In this instance, it appears
that the EEOC's Bismarck office "distorted [Goehring's] claims when transferring
allegations from an intake questionnaire onto the charge form."  B.K.B. Maui Police
Dep't, 276 F.3d 1091, 1102 (9th Cir. 2002), *as amended* (Feb. 20, 2002).  Several months
later, on July 29, 2021, Ms. Goehring received her Notice of Right to Sue from the
EEOC.  NOTICE OF RIGHT TO SUE, EEOC FORM 161-B, doc. 9-2.

   Only the charge and Notice of Right to Sue is what is provided to an employer, *not*
the questionnaire.  After the administrative process is complete, and conciliation was not
achieved by the adverse parties, only those claims that are specifically raised in the
charge, or those that are "'like or reasonably related'" to the administrative charges
presented, are ripe for federal litigation.  Lindeman v. Saint Luke's Hosp. of Kansas City,
899 F.3d 603, 608 (8th Cir. 2018) (*quoting* Williams v. Little Rock Mun. Water Works,
21 F.3d 218, 222 (8th Cir. 1994)).  Courts "construe administrative charges liberally" for
their scope of what is being alleged, Weatherly v. Ford Motor Co., 994 F.3d 940, 944
(8th Cir. 2021), but only to a point.  Defendant rightly notes that the United States Court
of Appeals for the Eighth Circuit has stated it "will not invent, *ex nihilo*, a claim that has
not been made before the relevant agency."  Id.  Rather, courts "will consider those
claims specifically raised and those that are 'like or reasonably related to' properly
exhausted claims."  Id. (*quoting* Wedow v. City of Kansas City, 442 F.3d 661, 672 (8th
Cir. 2006)).  See id. ("We have long treated discrimination and retaliation claims as
distinct for exhaustion purposes, so that exhausting one does not usually exhaust the

other."). Crucially, the Eighth Circuit has held it now requires "'[e]ach incident of discrimination and each *retaliatory* adverse employment decision' . . . be individually addressed before the EEOC." Sellers v. Deere & Co., 791 F.3d 938, 943 (8th Cir. 2015) (*quoting* Richter v. Advance Auto Parts, Inc., 686 F.3d 847, 851 (8th Cir. 2012) (*per curiam*)). However, there are times where two separate theories of discrimination are "so closely linked . . . that it is reasonable to think that the scope of the administrative investigation would have included a review" of both allegations, such as the discrimination claims themselves as well as the retaliation claims. Weatherly, 994 F.3d at 946. See id. at 944 ("Despite this refinement, we have occasionally deemed a claim so like or reasonably related to an exhausted claim that we have let it proceed. . . The key is that the scope of a judicial complaint can be no broader than the scope of the EEOC investigation that could reasonably be expected to grow out of the charge in the EEOC complaint.") (internal quotation omitted).

It is an open question for the Eighth Circuit – a question that has divided circuit courts around the country – whether a court can consider the allegations listed in the intake questionnaire, but negligently omitted by the EEOC when transferring the complainant's claims to the charge, to determine whether the retaliation claims now before this Court are in fact administratively exhausted, and thus can be entertained. If this Court is bound by the four corners of the charge document, where the proper box is "checked" but not listed in the actual substance of plaintiff's applicable allegations of abuse, the retaliation claims are not exhausted. While this specific question has bedeviled circuit and district courts, the matter here is even more narrow and distinguishable: what should a court do when the EEOC wrongly omits some of the complainant's bases of discrimination from the list of particular claims on the charge when transferring them from the intake questionnaire, but nevertheless *does* check all appropriate boxes on the charge form for the bases of discrimination? In other words, the agency rightly "checked" every applicable box on the charge for the proper bases of discrimination, but failed to list all particular types of discrimination claims alleged by an aggrieved party on the same form.

If the Court is within its ambit – as this Memorandum and Order explains it squarely is – to apply common sense in these circumstances, where the employer clearly was on notice for the instances of retaliation "checked" on the charge as well as the fact the retaliation claims are "so closely linked" to the other allegations of discrimination, then the two retaliation claims could be administratively exhausted. Id. at 946.  Because the necessary notice was still provided to the Bank through the checked retaliation box on the Charge, in addition to the underlying alleged conduct being "'like or reasonably related to the allegations of the [administrative] charge,'" which satisfy the statutes' "*dual* purpose[s] of establishing notice of the complainant's claims both to the agency *and* to the named respondent," courts can consider the underlying information in the questionnaire which thus exhausts the administrative requirements for the one properly alleged retaliation claim. *First quoting* Paskert v. Kemna-ASA Auto Plaza, Inc., 950 F.3d 535, 539 (8th Cir. 2020) (alteration in original) (*quoting* Tart v. Hill Behan Lumber Co., 31 F.3d 668, 671 (8th Cir 1994), *and then quoting* B.K.B. v. Maui Police Dep't, 276 F.3d 1091, 1101 (9th Cir. 2002) (emphases in original).

The Court first addresses defendant's correct argument that the questionnaire itself is not a charge in this matter, and then proceeds to explain why these dual reasons – (1) the fact the box was in fact checked measured within the context of the clear notice the Bank had; and (2) the matters are reasonably related and the age-based retaliation charge would be uncovered by an agency investigation – warrant considering what is listed in the questionnaire that was negligently omitted on the charge by the agency, buoyed by explanations of why defendant's opposing authorities are distinguishable and unpersuasive.

1. *The Questionnaire Cannot be Considered as Goehring's Charge*

First, the intake questionnaire here cannot itself be considered as Ms. Goehring's charge.  In Federal Express Corporation v. Holowecki, the United States Supreme Court held that, in certain circumstances, an intake questionnaire may be considered in lieu of a formal charge document as the actual charge for timeliness concerns.  552 U.S. 389, 397 (2008).  But Holowecki is distinguishable on two key fronts: (1) timeliness is *not* the

7

concern here; and most importantly (2) Goehring subsequently filed a formal charge. See Jones v. Needham, 856 F.3d 1284, 1290 (10th Cir. 2017) (acknowledging "the general rule remains that we typically look to the charge form *if one* exists. That is because the charge form, not a previous filing, is given to the employer to notify it of the potential claims against it and ordinarily determines the scope of the EEOC's investigation.") (emphasis added). See also Ahuja v. Detica Inc., 873 F. Supp. 2d 221, 229 (D.D.C. 2012) (explaining how Holowecki is not on point for matters where a formal charge was filed after the intake questionnaire.). Regardless, Goehring's intake questionnaire was not verified under oath for penalty of perjury, as required to constitute a formal charge. See 42 U.S.C. § 2000e-5(b) ("Charges shall be in writing under oath or affirmation . . .); Lawrence v. Cooper Cmtys., Inc., 132 F.3d 447, 450 (8th Cir. 1998) (pre-Holowecki case noting that in Title VII cases "'intake questionnaires do not satisfy the statutory requirements for a charge because they are not verified'") (*quoting* Diez v. Minn. Mining & Mfg. Co., 88 F.3d 672, 675 (8th Cir. 1996)). See also Edelman v. Lynchburg Coll., 535 U.S. 106, 107 (2002) (holding the verification requirement "protect[s] employers from the disruption and expense of responding to a claim unless a complainant is serious enough and sure enough to support it by oath subject to liability for perjury.").[1]

Because Holowecki is distinguishable on critical facts, it is not applicable on addressing instances where the plaintiff has signed the formal charge, which omitted listing the retaliation claims as specific claims but nevertheless checked the retaliation box on the form, after submitting an intake questionnaire.

---

[1] While the intake questionnaire need not be verified under oath or affirmation when initially signed, it would have had to be verified at some point before being sent to the Bank. See Edelman v. Lynchburg Coll., 535 US 106, 113 (2002) (holding statute requires "an oath only by the time the employer is obliged to respond to the charge, not at the time an employee files it with the EEOC."). The Bank rightly notes that North Dakota notaries, such as the case here, do not require the signee to provide verification through attesting to the document's truthfulness of its contents under oath or affirmation. This is ultimately moot, though, because the subsequent charge was properly submitted to the defendant and there is no question that the document at the center of this Court's analysis is the subsequent formal charge sheet.

2.  *Whether Retaliation Claims can be Exhausted When the Necessary Box was*
    *Properly Checked on Goehring's Charge, but Not Listed under the Charge's*
    *Summary of Claims*

Next, the Court assesses whether the two retaliation charges are administratively exhausted when the necessary box was checked on the formal charge, despite not being listed in the substantive list of claims because of negligence on the part of the EEOC when transferring Ms. Goehring's allegations from the intake questionnaire to the charging document.  This question has bedeviled circuit courts of appeal as well as district courts, offering diverging answers.  However, this matter is unique and distinguishable from both competing viewpoints: the retaliation charges were listed in the intake questionnaire *as well as* checked on the "Retaliation" box on the formal charge itself, but simply not addressed substantively on the formal charge's list of allegations despite the proper boxes being checked, unlike the case law defendant centers its brief around.  To make matters more complex, only one retaliation claim is sufficiently alleged in the intake questionnaire.  First, this Court looks at relevant case law parsing a similar – yet distinct – question: what to do when agency negligence causes an omission of a specific claim when transferring claims from the intake questionnaire to the charge. While these cases do not mention this matter's instance of where the necessary box was nevertheless checked, it is nonetheless helpful in guiding this Court's inquiry.

The Ninth Circuit is one of the few courts to have tackled an analogous question in a published opinion: what should courts consider administratively exhausted if a plaintiff properly asserts claims in her intake questionnaire, but were negligently omitted from the actual charge that was submitted to the employer?  In B.K.B. v. Maui Police Department, the plaintiff appears to have checked the boxes on her intake questionnaire for "discrimination based on 'race,' 'sex,' and 'national origin,' and that she believed that she had been subject to 'harassment.'" 276 F.3d 1091, 1100 (9th Cir. 2002).  However, in her charge, the plaintiff only listed "what she calls allegations of 'race and retaliation harassment,'" omitting the intake questionnaire's complaints centered on sex and national origin.  Id.  The B.K.B. Court's decision to allow these additional claims to be

9

administratively exhausted boils down to two points: (1) the agency error is not enough justification to toss aside the plaintiff's claims; and (2) because of the interconnectedness that can take place between race and sex discrimination, they are like or reasonably related enough that the employer was on sufficient notice for these claims.[2]

It is necessary to bear in mind, the Ninth Circuit noted, that the U.S. Supreme Court has warned courts that "technicalities are particularly inappropriate in a statutory scheme [such as Title VII] in which laymen, unassisted by trained lawyers, initiate the process.'"). Id. (*quoting in parenthetical* Love v. Pullman Co., 404 U.S. 522, 527 (1972)). The B.K.B. Court proceeded to acknowledge that the charge fulfills the "*dual* purpose of establishing notice of the complainant's claims both to the agency *and* to the named respondent." Id. at 1101 (emphases in original). But to what cost must the notice to the employer trump the negligence of an agency staffer? The Ninth Circuit persuasively articulates that "'[a] Title VII complainant is not charged with the commission's failure to perform its statutory duties,'" where the only failure to notify the employer was because of a "failure of notification due to the agency's negligence." Id. at 1102 (*quoting* Watson v. Gulf & W. Indus., 650 F.2d 990, 992 (9th Cir. 1981)). To not allow these claims listed on the intake questionnaire, but not the charge because of agency negligence, to be considered exhausted would be "inconsistent with the remedial purposes of the statute." Id. Because the only reason the employer was not notified of these race and national origin allegations of discrimination is because the agency "distorted her claims when transferring allegations from an intake questionnaire onto the charge form," all of B.K.B.'s claims were administratively exhausted. Id.

The Ninth Circuit is not alone in reaching this logical endpoint. In an unpublished opinion of the Eleventh Circuit, Judge Aldaberto Jordan points out that "B.K.B. provides some persuasive support for the proposition that a plaintiff can present the pre-complaint intake questionnaire to satisfy the exhaustion requirement when the EEOC or state agency negligently or improperly narrows her claim." Hicks-Washington v. Hous. Auth.

---

[2] The "like or reasonably related" test is discussed further below, see *infra* II.B.3.

of City of Fort Lauderdale, 803 Fed. Appx. 295, 304 (11th Cir. 2020) (Jordan, J.,
concurring). This was ultimately irrelevant in the matter before Judge Jordan and the
Eleventh Circuit, but his dicta is influential in this Court's analysis. Finally, when tasked
with deciding "whether an EEOC intake questionnaire can constitute a charge for
exhaustion purposes when the plaintiff later filed a formal EEOC charge that did not
include some of the claims made in the questionnaire," the District Court for the District
of Columbia surveyed persuasive case law before concluding such matters omitted from
the charge are nevertheless administratively exhausted. See Klotzbach-Piper v. Nat'l RR
Passenger Corp., 373 F. Supp. 3d 174, 189 (D.D.C. 2019).

Additionally, the District Court for the Eastern District of Arkansas has also
weighed in, albeit in context of a *pro se* litigant. In Wilkes v. Nucor-Yamato Steel
Company, the Court explained how the plaintiff did not have the box for "Race" checked
on her formal charge, but *did* check the applicable box on her intake questionnaire. 2015
WL 5725771, at *2–4 (E.D. Ark. Sept. 29, 2015). The District Court forcefully
acknowledged that "[e]quitable considerations" were at play which allowed the
unrepresented plaintiff to nevertheless litigate her race-based claims despite the fact she
never amended her charge. Id. at *9. Looking across the legal landscape, the Wilkes
Court noted that "[t]here is authority from other jurisdictions that a court may look
outside the EEOC charge where the charge is deficient due to the fault of the EEOC." Id.
The Court's holding that Ms. Wilkes could litigate all the claims presented on her intake
questionnaire is further supported from the backdrop explained by Eighth Circuit
precedent allowing for equitable tolling "'when an agency misleads a complainant as to
certain specific pleading requirements, [so that] a claimant's failure to adhere to those
requirements may be excusable, and thus, equitable tolling may apply.'" Id. (*quoting*
Schlueter v. Anheuser-Busch, Inc., 132 F.3d 455, 459 n.4 (8th Cir. 1998) (overruled on
other grounds)). Accordingly, on a motion to dismiss, the Wilkes Court considered the
claims listed on the intake questionnaire but omitted the charge. Id. True, Ms. Wilkes
was *pro se*, unlike Goehring. While it is unclear from the record when Ms. Goehring
obtained counsel, it is clear she was represented no later than when she received her

11

Notice of Right to Sue: this form was mailed to her attorney's office in Gregory, South Dakota. NOTICE OF RIGHT TO SUE, EEOC FORM 161-B, doc. 9-2 at 1. Nevertheless, these persuasive authorities forcefully articulate why plaintiffs should not be punished for the negligence on the part of the EEOC. And at the risk of sounding like a broken record, the Court again acknowledges that the matter is even more favorable to the plaintiff here: while the charge did not list out retaliation as part of the specified claims, the retaliation box *was still checked*, providing some notice to the Bank. But that is not the end of the inquiry: only retaliation pertaining to alleged age-based discrimination is meaningfully articulated in the intake questionnaire.

While cognizant Ms. Goehring likely was unassisted when crafting her intake questionnaire, there still must be sufficient indicia of retaliation charges for both the age and sex-related claims to proceed. On the first page of her supplement to the intake questionnaire, Goehring raised an alleged instance in January 2020 where she complained to her superior about younger employees receiving "more flexible work rules" from which she could not benefit. INTAKE QUESTIONNAIRE, doc. 14-1 at 6. Subsequently, according to Goehring, she was "required [] to take one day and one hour of vacation pay" when she had a COVID-19 exposure, in order to be made out as an "example." Id. True, she was able to have the Board of Directors reverse the actions of her supervisor, Bank president Roy Shwartz. Id. But later that month, Goehring also made complaints to the Board for purported disparate treatment suffered by older employees than younger colleagues because of Schwartz, leading to additional possible reasons for Schwartz to want Goehring's termination pertaining to plaintiff's age-based complaints. Id. at 7. Finally, in October of that same year, the plaintiff complained to the Board about open insubordination from a younger employee, for which no action was taken. Id. Two months later, when making reasonable inferences in favor of the plaintiff, Schwartz's firing of Goehring could be seen as possible retaliatory measures related to these age-based complaints. When pursuing an investigation, the EEOC would be forced to confront the age-based retaliation charge dating to the several age-based complaints and

12

Goehring's ultimate firing in December 2020.  See INTAKE QUESTIONNAIRE, doc. 14-1 at 6, 7.

Taking these allegations as true, Ms. Goehring has sufficiently charged an instance of retaliation because of her age.  While her intake questionnaire also provides allegations of sex-based discrimination, nowhere in this document are there similar measures pertaining to *retaliation* on the count of sex.  She cannot make up for this prior omission by pleading new facts in her complaint.  See doc. 1.  To hold otherwise would be to "invent[], *ex* nihilo, a claim which simply was not made." Paksert v. Kemna-ASA Auto Plaza, Inc., 950 F.3d 535, 539 (8th Cir. 2020) (alteration in original) (*quoting* Shannon v. Ford Motor Co., 72 F.3d 678, 685 (8th Cir. 1996)).  Accordingly, only the retaliation charge in Count IV, not Count II, can stand.  Next, the Court explains why distinguishable and contrary non-binding case law is unpersuasive.

The principal published opinion departing from B.K.B. is the Seventh Circuit's decision in Novitsky v. American Consulting Engineers, L.L.C..  There, Ms. Novitsky listed a specific instance of religion-based discrimination on her intake questionnaire because of an alleged workplace requirement that the Jewish plaintiff work on the Yom Kippur holiday, against her wishes.  Novitsky v. Am. Consulting Eng'rs, L.L.C., 196 F.3d 699, 700 (7th Cir. 1999).  However, the actual charge omitted any failure to accommodate charge, focusing on other discrimination allegations.  Detrimental to Novitsky, Judge Easterbrook wrote for the Court, the charge "does not mention Yom Kippur or hint at a theory of failure to accommodate her religious practices, a claim different in kind from the normal anti-discrimination principle, which requires the employer to *disregard* age, religion, and other personal characteristics such as race and sex." Id. at 701 (emphasis in original).  The Seventh Circuit rejected the argument that the employer had sufficient notice for failure to accommodate allegations, even though its omission was the fault of the EEOC, resting on the notion that "[o]nly the charge is sent to the employer, and therefore only the charge can affect the process of conciliation," measured with the fact Novitsky signed the charge without seeking to amend it. Id. at 702.

13

Subsequent case law from the Seventh Circuit has questioned <u>Novitsky</u>'s precedential force. Eleven years after <u>Novtisky</u>, the Court noted that its precedent has "suggested that written '[a]llegations outside the body of the charge may be considered when it is clear that the charging party intended the agency to investigate the allegations.'" <u>Swearnigen-El v. Cook Cnty. Sheriff's Dep't</u>, 602 F.3d 852, 865 (7th Cir. 2010) (alteration in original) (*quoting* <u>Vela v. Vill. of Sauk Vil.</u>, 218 F.3d 661, 664 (7th Cir. 2000)). But the Court also favorably cited, "*cf.*," to <u>Novitsky</u> for the holding that a plaintiff cannot rely on a questionnaire when she "read the formal charge and obtained legal advice before signing." <u>Id</u>. However this was ultimately dicta, because there the plaintiff failed to properly state a cognizable allegation of retaliation discrimination. <u>Id</u>. See also Vela, 218 F.3d at 664 ("There are cases where courts have looked beyond the four corners of the EEOC charge form. 'Allegations outside the body of the charge may be considered when the charging party intended the agency to investigate the allegations.'") (*quoting* <u>Cheek v. W. & S. Life Ins. Co.</u>, 31 F.3d 497, 502 (7th Cir. 1994)). <u>But see id.</u> at 665 (favorably citing <u>Novitsky</u> for not allowing plaintiff to rely on information listed on the intake questionnaire but not the charge, emphasizing that the plaintiff could have read – and amended – the charge while also obtaining legal advice).

District courts within the Seventh Circuit have also struggled with the applicability of <u>Novitsky</u>. In <u>Jordan v. Whelan Security of Illinois, Inc.</u>, the District Court declared it "will not adhere to the broad reading of <u>Novitsky</u>" when "[t]he inconsistency between the language of <u>Novitsky</u> and these later decisions [such as <u>Swearnigen-El</u> and <u>Vela</u>] have sown confusion in the district courts." 30 F. Supp. 3d 746, 751 (N.D. Ill. 2014). Rather, the <u>Jordan</u> Court used a series of factors to determine what may be considered for exhaustion, including whether the plaintiff "had an attorney when she signed the charge, whether the questionnaire was filed contemporaneously with the charge, and whether the EEOC engaged in inequitable conduct." <u>Id</u>. Further, on a motion to dismiss, the Court noted these answers were not clear from the record, but also noted that plaintiff "was not required to anticipate affirmative defenses in her complaint," allowing the defendants to renew their arguments at summary judgment. <u>Id.</u> at 751–52. <u>See also Fantozzi v.</u>

Winston & Strawn LLP, 2011 WL 3704930, at *4 (N.D. Ill. Aug. 17, 2021) (applying similar factor test as in Jordan). Like in Jordan, before the record presented here the Court cannot answer when Goehring obtained counsel (except that she did have counsel when receiving her Notice of Right to Sue) and when applicable equitable factors are at play. Defendant rightly points to Williams v. County of Cook, where another district court ventured in the opposite direction. See 969 F. Supp. 2d 1068 (N.D. Ill. 2013). What this flurry of case law shows is that even within the circuit to have sided against the plaintiffs in these situations (which are not identical to this matter, since here the "Retaliation" box was in fact checked on the charge), the precedential weight of Novitsky is muddled at best.

The Bank points the Court's attention to other unpublished out-of-circuit case law. In Barzanty v. Verizon PA, Inc., the defendant correctly notes that the Third Circuit did not allow the plaintiff to "transfer the allegations mentioned only in the questionnaire to the charge itself" because this "[n]ot only would . . . be circumventing the role of the Commission, but it would be prejudicial to the employer." 361 Fed. Appx. 411, 415 (3rd Cir. 2010). So, unless the matters are like or reasonably related, the Barzanty Court declined to consider the hostile work environment claim listed on the questionnaire, but not on the plaintiff's actual charge. The Tenth Circuit has marched to a similar tune to Barzanty. In Green v. JP Morgan Chase Bank National Association, an unpublished panel of the Tenth Circuit favorably cites Barzanty in holding that "where an employee includes a claim in the intake questionnaire, but then omits it in a timely subsequent formal charge that forms the basis for the administrative proceedings," it has not been properly exhausted. 501 Fed. Appx. 727, 731 (10th Cir. 2012).

None of these cases, from B.K.B. to Novitsky, are directly on point. Unlike this flurry of competing case law, here the specific "Retaliation" box was checked on Ms. Goehring's charge. But defendant does offer case law in similar situations to the matter here. In Cooper v. Xerox Corporation, the District Court for the Western District of New York granted summary judgment for Xerox where the plaintiff checked the box for retaliation, but had no facts in the administrative charge connected to retaliation. 994 F.

Supp. 429, 436–36 (W.D.N.Y. 1998). "'Were it otherwise,'" the Court noted, "'plaintiffs could circumvent the reasonably related rule altogether by simply checking every box on their EEOC form.'" Id. at 436 (*quoting* McKinney v. Eastman Kodak Co., 975 F. Supp. 462, 466 (W.D.N.Y. 1997)). However, in Cooper, retaliation "simply never was asserted in *any* EEOC submission." Id. at 435. But here, it *was* clearly asserted in the initial intake questionnaire. And for similar reasons defendant's other citation to Thomas v. Ameren U.E. falls. In Thomas, where the plaintiff only checked the box for "disability" on the applicable form, it was clear that "she never administratively pursued her ADA claim beyond checking a box labeled 'disability,'" and where the complainant "made no substantive allegations about any such discrimination" based on the record before the Court. 2018 LEXIS 179157, at *3 (E.D. Mo. Oct. 18, 2018). Again, this matter is distinguishable because, based upon the record before this Court, Goehring *did* provide an "'explanation [and] description'" of the purported age-based retaliation before the administrative agency. Id. (*quoting* Cooper, 975 F. Supp. at 436).

The Bank argues that to consider the retaliation claims exhausted "would prejudice employers as they only receive, and thus can only respond to, the formal charge in the EEOC investigation." DEFENDANT'S REPLY IN SUPPORT OF PARTIAL MOTION TO DISMISS, doc. 15 at 8. But to argue this defendant had *no* notice stretches the imagination. Nobody can read the listed allegations on Goehring's charge without clearly noticing that the "Retaliation" box was checked for what sort of discrimination is being alleged. Even if the intake questionnaire cannot be considered (which it can under these narrow circumstances), the age-based retaliation claim is like or reasonably related to the age-based discrimination claim properly exhausted. The failure of the EEOC to not properly list the retaliation charges alongside the other allegations within the charge when *the Retaliation box was checked on the charge* is not enough to prohibit Goehring from further litigating the one retaliation claim pertaining to age when it is patently clear the Bank was on notice.

3.  *Whether the Age-Based Retaliation Claim is Like or Reasonably Related to the*
    *Properly Listed Allegation of Age Discrimination in the Charge*

Further, in addition to this Court's explanation of why in these specific
circumstances the age-based retaliation claim is exhausted when delving back to the
intake questionnaire, it is also like or reasonably related to the indisputably exhausted age
discrimination claim.   While it is true that "discrimination and retaliation claims [are
treated as] distinct for exhaustion purposes, so that exhausting one does not usually
exhaust the other," there are occasions where the retaliation claims would "reasonably be
expected to grow out of the charge'" in the EEOC complaint.   Weatherly v. Ford Motor
Co., 994 F.3d 940, 945 (8th Cir. 2021) (*quoting* Wedow v. City of Kansas City, 442 F.3d
661, 674 (8th Cir. 2006)).

The Eighth Circuit has recently examined the applicable inquiry for whether a
stated claim on a formal charge is "like or reasonably related" to a claim that not properly
raised at the administrative level.   See id. at 944–45.   In Weatherly v. Ford Motor
Company, the Eighth Circuit made clear that while "we construe administrative charges
liberally, we will not invent, *ex nihilo*, a claim that was not made before the relevant
agency."   Id. at 944.   And over time the appellate court has "'considerably narrowed [its]
view' of the type of claim that could be considered 'like or reasonably related to'
properly exhausted claims . . . so that we now require that '[e]ach incident of
discrimination and each retaliatory adverse employment decision . . . be individually
addressed before the EEOC."   Id. (third and fourth alteration in original) (*first quoting*
Wedow, 442 F.3d at 672, *and then quoting* Sellers v. Deere & Co., 791 F.3d 938, 943
(8th Cir. 2015)).   This is necessary to avoid "'circumscrib[ing] the EEOC's investigatory
and conciliatory role, as well as deprive the charged party of notice of the charge, as
surely as would an initial failure to file a timely EEOC charge.'"   Watson v. O'Neill, 365
F.3d 609, 614 (8th Cir. 2004) (*quoting* Williams v. Little Rock Mun. Water Works, 21
F.3d 218, 223 (8th Cir. 1994)).   This is particularly true for retaliation claims, where they
have been "long treated" as "distinct for exhaustion purposes, so that exhausting one does
not usually exhaust the other."   Weatherly, 994 F.3d at 945. But that has not fully closed

the door. See id. at 944–46.  What matters, the Weatherly Court instructed, is that "the scope of a judicial complaint can be no broader than the scope of the EEOC investigation that 'could reasonably be expected to grow out of the charge' in the EEOC complaint.'" Id. at 945 (quoting Wedow, 442 F.3d at 674).

Weatherly itself proves the point that claims may still proceed as being like or reasonably related to an administratively exhausted claim, even under the narrowed review required.  There, even though the plaintiff did not exhaust a discriminatory termination charge, it was so intertwined with a failure to accommodate charge that *was* exhausted, the matter could be considered sufficiently like or reasonably related to warrant further judicial proceedings. Id. at 946.  The crux of the inquiry was the fact that the "failure to accommodate is so closely linked to an adverse employment action that it is reasonable to think that the scope of the administrative investigation would have included a review of that adverse action." Id.  To hold otherwise would be to merely offer "lip service to the duty to construe administrative complaints liberally." Id.

Here, like in Weatherly, the plaintiff's charge would likely have triggered an EEOC investigation that also covered the alleged age-based retaliatory action.  It bears noting that this matter is the exception to the general rule.  But it is undeniable that an EEOC investigation could "'reasonably be expected to grow out of [Goehring's] charge'" that would necessarily encompass the retaliation charge on count of age. Id. at 945 (quoting Wedow, 442 F.3d at 674).

In another recent decision, the Eighth Circuit held that the retaliation charges could not be read as likely or reasonably related to the properly exhausted termination and demotion allegations because the plaintiff did not make an adequate connection in her intake questionnaire to purported instances of retaliation. Paskert v. Kemna-ASA Auto Plaza, Inc., 950 F.3d 535, 539–40 (8th Cir. 2020).  Notably, in Paskert v. Kemna-ASA Auto Plaza, Inc., the plaintiff "failed to answer Question 18, which directly asked about retaliation, and also failed to separately allege a retaliation claim before the [Iowa Civil Rights Commission]." Id. at 539.  But this matter is starkly different.  As the Court previously laid out, *supra* II.B.2., at the motion to dismiss stage Goehring has sufficiently

alleged an age-based retaliation claim to the EEOC so that any investigation into her discrimination charges pertaining to age would undoubtedly have been confronted with this purported retaliation claim. See id. at 539–40 (emphasizing there was no assertion of retaliation allegations before state administrative agency under identical administrative processes as here for explaining why retaliation claim was not like or reasonably related to properly exhausted claim). And, as the Court has previously explained, *supra* II.B.2., the same cannot be said for instances of sex-based retaliatory actions. Because the age-based retaliation claim is so "closely connected" to the age discrimination allegations properly presented in the charge, this Court finds – at this stage of litigation – that Goehring has sufficiently raised the claim in her intake questionnaire (which also had the requisite box checked on the formal charge) so that the scope of any EEOC investigation would include the retaliation accusations. Weatherly, 994 F.3d at 946. To hold otherwise would be to give "mere lip service to the duty to construe administrative complaints liberally," even under the "narrowed" analysis demanded by precedent. Id.

The crux of this inquiry boils down to a simple question: should the plaintiff be punished for the negligence of the EEOC in transferring her allegation of age-based retaliation to the charge, negligence that was not amended by Goehring, when (1) the actual box of retaliation was checked on the charge providing some notice to the Bank; (2) it was reasonably related to the other clearly transcribed accusations of age discrimination so that an administrative investigation would have included the retaliation concern in its review; and (3) when it belies belief to argue the Bank did not have clear notice from the charge that a retaliation claim could be presented in an EEOC investigation or a federal suit. Common sense, secured by persuasive case law and the purpose of the ADEA – to "prohibit arbitrary age discrimination in employment" –, demands this Court allow the age-based retaliation claim to proceed. Jankovitz v. Des Moines Indep. Comm. Sch. Dist., 421 F.3d 649, 654 (8th Cir. 2005). Defendant's case law to the contrary is readily distinguishable and unpersuasive. This is despite the fact that the briefs authored by defendant's attorney is very well done. Ms. Goehring's age-

centered retaliation claim will not be thrown out on semantics and agency negligence divorced from the reality of this case.

4. *Whether Goehring Exhausted Administrative Remedies for Adverse Actions Listed in Complaint for Sex and Age Discrimination Counts*

Stepping away from claims surrounding administrative exhaustion of the *retaliation* counts, the Bank also contends that Ms. Goehring has failed to administratively exhaust claims centered on sex-based adverse privileges, failure-to-promote, adverse compensation, and adverse terms and conditions. Defendant also argues plaintiff has not properly exhausted charges stemming around age-based adverse terms and conditions, as well as adverse compensation. The only claims the Bank does not dispute are exhausted are those claims centered on discharge.

The analysis here is analogous to assessing whether Goehring's retaliation claims are properly exhausted. See *supra* II.B.2.,3. But it bears emphasizing here that "'[e]*ach incident* of discrimination . . . constitutes a separate actionable unlawful employment practice that *must be individually addressed* before the EEOC.'" Voss v. Hous. Auth. of the City of Magnolia, Arkansas, 917 F.3d 618, 623 (8th Cir. 2019) (second and third alterations in original) (*quoting* Sellers v. Deere & Co., 791 F.3d 938, 943 (8th Cir. 2015)). When dissecting whether different alleged adverse actions have been exhausted under the umbrella of the larger allegations of discrimination based on sex or age, guiding precedent instructs courts to focus on whether specific distinct allegations of adverse conditions are addressed before the EEOC or in the ultimate charge. See generally Parisi v. Boeing Co., 400 F.3d 583, 586 (8th Cir. 2005). To do otherwise would be to "invent, *ex nihilo*, a claim that was not made before the relevant agency." Weatherly v. Ford Motor Co., 994 F.3d 940, 944 (8th Cir. 2021). And in a case repeatedly cited by defendant, the Eighth Circuit hints that courts may look behind the curtain on what is presented in the actual charge when assessing which specific charges were made before the EEOC. See Sellers, 791 F.3d at 943 ("'Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice that must be individually addressed *before the*

*EEOC*.'") (emphasis added) (*quoting* <u>Richter v. Advance Auto Parts, Inc.</u>, 686 F.3d 847, 851 (8th Cir. 2012) (*per curiam*)). Even when "constru[ing] administrative charges liberally," this Court can only consider as exhausted those specific claims pertaining to sex and age-based discrimination allegations that had sufficient facts raised before the EEOC. <u>Weatherly</u>, 994 F.3d at 944.

Here, most, but not all, of Goehring's charges are properly exhausted. First, Goehring's charge clearly states allegations of sex and age-based discrimination affecting the "terms and conditions of [her] employment." CHARGE, EEOC FORM 5, doc. 9-1. So, only if the plaintiff did not adequately plead in her intake questionnaire's supplemental statement sufficient indicia of adverse terms and conditions of her employment – as defendant asserts and will be addressed next –, could these specific charges be considered unexhausted.

All of plaintiff's sex-based discrimination claims are properly exhausted. In addition to terms and conditions and discharge – both of which defendant acknowledges are properly before this Court, while disputing the merits of the terms and conditions charge – Ms. Goehring also alleges charges concerning adverse privileges, failure-to-promote, and adverse compensation. <u>See</u> COMPLAINT, doc. 1 at 9. For the adverse privilege because of sex charge, Goehring's supplement to the intake questionnaire lists several factors: women such as herself were given worse job duties than men, women were not offered bank-owned life insurance policies, could not attend bank officer retreats, were provided lower reimbursement rates when entertaining customers, only women were required to wear masks in the workplace, and that when the Bank instituted a one-week-on and one-week-off schedule because of COVID-19, only the female employees were instructed to stay home on weeks off whereas male employees "were permitted to travel and attend concerts during this same time." INTAKE QUESTIONNAIRE, doc. 14-1 at 7. Such differences in "fringe benefits," taken as true, are impermissible and are applicable grounds to be raised before the EEOC and this Court. <u>See</u> 29 § C.F.R. 1604.9 (specifically mentioning life insurance disparities on basis of sex as

impermissible).   These numerous allegations raise sufficient assertions to be administratively exhausted.

Next, Goehring's failure-to-promote allegation has been properly laid before the EEOC.  The plaintiff writes that job postings and interview procedures were not in fact followed by the Bank in order to prevent women from having a "fair chance to be considered for open positions."  INTAKE QUESTIONNAIRE, doc. 14-1 at 7.  Sex-motivated hiring practices are forbidden outside very narrow circumstances not present here.  See generally C.F.R. § 1604.2(a) ("The [EEOC] believes that the bona fide occupational qualification exception as to sex should be interpreted narrowly.").  Like her adverse privileges claim, Goehring's failure-to-promote argument is properly before this Court.

Ms. Goehring has also properly raised an adverse compensation charge.  She clearly noted that male employees are "paid more" than female employees.  INTAKE QUESTIONNAIRE, doc. 14-1 at 7.  This charge also has been administratively exhausted.

Unlike the plaintiff's sex-related charges, her age-focused charge of adverse compensation was not properly presented before the EEOC.  See id. at 6–7 (no assertions of age-based adverse compensation).  While this would be a valid charge to bring before the EEOC, 29 U.S.C. § 623, there have not been sufficient facts raised in the administrative process.  Accordingly, this Court will not allow Goehring to invent a new claim not properly exhausted below.

All of Ms. Goehring's five charges under the sex-discrimination Count presented before this Court are properly exhausted.  While plaintiff's adverse terms and conditions and discharge charges for age-based discrimination are administratively exhausted, the same cannot be said for her adverse compensation charge.  Next, the Court must assess whether Goehring has gone beyond general allegations of discriminatory "terms and conditions," as asserted by defendant, or if she did in fact plead beyond barebones conclusions in the administrative process below.

22

## C. **Whether Plaintiff has Sufficiently Made Bare Adverse Terms and Conditions Claims in Administrative Process**

Next, the Bank contends Goehring has not ventured beyond conclusory allegations for her terms and conditions charges.  It is mistaken.

The Bank correctly notes that the Eighth Circuit's decision in Faibisch v. University of Minnesota does not permit charges that fail to venture beyond "conclusory statement[s] of sex [or age] discrimination in the charge" to be considered administratively exhausted once litigation has commenced.  304 F.3d 797, 803 (8th Cir. 2002) (alterations in original), *overruled on other grounds by* Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369 (2004).  In Faibisch, the complainant only offered a brief assertion without substantiation that she "was also treated with hostility and adversely, impacting the terms and conditions of [her] employment, due to [her] gender/female." Id. (internal quotations omitted) (alteration in original).  This statement was but a brief assertion of sex-based discrimination preceding a "long, particularized account" of her alleged disability-based discrimination.  Id.  Because Faibisch presented "no facts" before the EEOC which could "establish[] any connection between the alleged gender discrimination and her termination," the charge could not be considered exhausted.  Id.

Unlike in Faibisch, Goehring ventured far beyond conclusory statements in asserting the substance behind her terms and conditions discrimination allegations based on sex and age.[3]  In her intake questionnaire, which this Court has at length explained can and should be considered alongside the charge in this matter when confronted with agency negligence and only the barest of bones provided in the charge itself, *supra*, she *does* provide sufficient allegations of sex and age-based discrimination affecting the terms and conditions of her employment.

First, the basis of Goehring's terms and conditions charges apply similar facts described above for her other charges.  Ms. Goehring alleges that the Bank's atmosphere

---

[3] Defendant notes another instance of agency negligence that wrongly listed the starting and end date of alleged discrimination as December 30, 2020.  This Court will not penalize Goehring when the Bank had clear notice that terms and conditions-based discrimination charges could be levied based on the charge alone when looking to the listed claims.

was starkly different for female employees compared to their male counterparts.  She alleges that men had "more flexible work conditions," men are encouraged to enjoy alcoholic beverages at the end of the business day while women continued to work, were given different reimbursement rates when entertaining customers, and that there were mask-wearing requirements based on sex.  INTAKE QUESTIONNAIRE, doc. 14-1 at 7. Having different conditions for enjoying cocktails at work strays similar to a long-standing EEOC decision that businesses cannot offer competing practices concerning smoke breaks based on an employee's sex.  See EEOC DECISION NO. 71-109 (July 29, 1970).  Similarly, by instituting alleged workplace practices where only men could have a "fair chance" at open positions, such as for management openings, is analogous to offering less mentoring and training opportunities for employees because of their sex. See Jensvold v. Shalala, 829 F. Supp. 131, 136–37 (D. Md. 1993).  At the motion to dismiss stage, Ms. Goehring has raised sufficient facts – when taken as true – at the administrative stage to ripen this sex-based charge before the Court.

Similarly, the plaintiff has gone beyond conclusory statements to assert an age-based terms and conditions charge.  At the agency proceedings below, Goehring asserted that "[y]ounger employees get different work conditions in terms of pay, bonuses, attendance, and behavior." INTAKE QUESTIONNAIRE, doc. 14-1 at 6.  While these specific complaints were not described at length, they still went beyond mere conclusory statements.   Unlike in Faibisch, Goehring did not rest upon vague conclusory statements for her age-based discrimination.  Rather, she explained specific allegations of age-based discrimination affecting the terms and conditions of her employment and offered context for the general atmosphere of purported discrimination on older employees. Accordingly, this matter is ripe for litigation before this Court.  See Joiner v. Allied Staffing, 2018 WL 4059462, at *4 (W.D. Mo. Aug. 24, 2018) (also finding Faibisch distinguishable when plaintiff went beyond conclusory statements before the administrative agency by providing the "long particularized account" urged by the Faibisch Court).

It befuddles belief to argue Goehring has sufficiently exhausted her discharge claims, but not her terms and conditions charges.  Both are dispensed in similar succinctness on the charge:

> I have been employed with the above-named Respondent since 1988, I believe the Respondent subjected me to discriminatory treatment by subjecting me to differential terms and conditions of employment and by discharging my employment without warning in December of 2020.

The Bank's arguments that the discharge and terms and conditions charges should be treated differently when drafted with identical structure and brevity on the charge is not supported by law or common sense.

### D. Goehring Cannot Amend Charge to Include Age-Based Adverse Compensation Charge

Because the plaintiff has commenced her legal action based on the Notice of Right to Sue received from the EEOC, she cannot go back and amend the charge to include the age-based retaliation charge or the age-based adverse compensation charge.  See McKenzie v. Lunds, Inc., 63 F. Supp. 2d 986, 1001 (D. Minn. 1999) (explaining why "it cannot reasonably be argued that the Plaintiff's 'amended' claims related back to his Charge of age discrimination" after "commenc[ing] his legal action.").  Defendant's argument concerning timeliness to refile is subsequently moot.

### E. Whether Plaintiff's Claims Rise to Level of Adverse Employment Actions

Adverse employment actions are those where "'a reasonable employee would have found the challenged action materially adverse.'"  Lopez v. Whirlpool Corp., 989 F.3d 656, 664–65 (8th Cir. 2021) (quoting AuBuchon v. Geithner, 743 F.3d 638, 642 (8th Cir. 2014)).  This can be "'termination, cuts in pay or benefits, and changes that affect an employee's future career prospects, as well as circumstances amounting to a constructive discharge.'"  Jones v. City of St. Louis, Missouri, 825 F.3d 476, 480 (8th Cir. 2016) (quoting Jackman v. Fifth Judicial Dist. Dep't of Corr. Servs., 728 F.3d 800, 804–05 (8th Cir. 2013)).  But a "[m]ere inconvenience without any decrease in title, salary, or benefits is insufficient to show an adverse employment action.'"  Wedow v. City of Kansas City,

Missouri, 442 F.3d 661, 671 (8th Cir. 2006) (*quoting* Sallis v. Univ. of Minnesota, 408 F.3d 470, 476 (8th Cir. 2005)).

Here, when construing all reasonable inferences in the plaintiff's favor, Goehring has presented sufficient claims of actions – when taken as true – that would be materially adverse in the workplace. The Bank takes issue with four specific allegations brought by the plaintiff: (1) COVID-19 protocols where only female employees were required to wear masks at the office; (2) a week-on/week-off COVID-19 prevention work schedule where female employees must be "at home" on weeks off whereas men could freely travel and attend concerts; (3) male employees being allowed to drink alcohol in the Bank's kitchen at end of business days while "generally" female employees were expected to stay at their desks; and (4) allowing younger employees to drink beer at desks and not follow bank work hours. While plaintiff seems to concede the third and fourth points are not rising to the level of adverse actions, and thus this Court should not consider them, she nonetheless asserts the COVID-19 related actions do hold merit.

Viewed together, these two COVID-19 practices constitute adverse actions and should proceed past the motion to dismiss stage of briefing. While an alteration in schedule alone is not enough to form an adverse employment action, Recio v. Creighton University, 521, F.3d 934, 940 (8th Cir. 2008), this goes far beyond such allegations. At the height of a global pandemic, female employees were forced to stay home while men were free to go about their lives. This requirement – taken as true – to remain home is clearly such a change in circumstances that an employee's benefits have been fundamentally altered for arbitrary reasons. If this was truly a necessary measure, then the Bank would have made such a requirement binding on all employees, not simply on the female workforce. Further, this is accompanied by allegations that only women had to wear masks. Accepting these allegations as true, it stretches beyond the imagination to argue a reasonable person would *not* find it materially adverse to only have part of the workforce masked. These half-hearted health measures, when taken as true, serve little purpose except to treat female staff as subordinate to all male counterparts, regardless of

title, leading to the potential for worse future career prospects because of starkly different treatment by management.

Defendant's assertions backed by out-of-circuit case law to the contrary are unpersuasive. In a published opinion from the District Court for the Eastern District of New York, the court rightly noted that inconsistent application of workplace rules typically does not rise to the high bar of adverse employment actions, this matter is distinguishable. In Sosa v. New York City Department of Education, the plaintiff never pleaded that she was treated differently in a way that affected her pay, benefits, or privileges of employment, or that she experienced a demotion. 368 F. Supp. 3d 489, 513 (E.D.N.Y. 2019). Instead, she failed to explain how she had her employment conditions "*negative[ly]* change[d]." Id. at 512 (emphasis in original). But here, Ms. Goehring has put forward a plausible case that she experienced negative employment conditions when forced to wear a mask while male counterparts did not, leading to possible perceptions of a gendered hierarchy where men could be treated better than women, and thus face materially different advancement prospects going forward. Further, being forced to stay home with apparently little legitimate purpose – since male colleagues did not have such restrictions – can lead to the reasonable inference there has been an adverse change in benefits. Defendant's other out-of-circuit district court citation is equally unpersuasive. See Robinson v. Macy's Retail Holding, Inc., 2015 WL 10793114, at *12–13 (S.D.N.Y. Aug. 19, 2015) (court finding on summary judgment no adverse employment action when complaints were only about scheduling weekends off, not receiving "gifts," not asked to attend certain meetings, and complaints about responsibilities outside her job title). Goehring's assertions raise greater indicia of adverse employment actions, especially when considered on a motion to dismiss.

Understandably, there is sparse case law concerning adverse employment actions within the COVID-19 context. But to have logically inconsistent office (and home) practices concerning COVID-19 as alleged here, there are sufficient adverse changes in benefits and future career prospects. To be constrained to one's home and be barred from traveling can be construed as a materially adverse benefit change on a motion to dismiss.

27

Further, the requirement to wear a mask when male counterparts held no such obligation can lead to concerns of treating females as second-class workers who literally are given less "face time" with supervisors, which may ultimately lead to worse future career prospects at the Bank. Taking these allegations as true, Ms. Goehring has brought forward sufficient allegations of adverse employment actions to withstand a motion to dismiss.

## III.   CONCLUSION

At this stage of briefing, most of Ms. Goehring's claims withstand the Bank's Motion to Dismiss, but not all. As this Court has carefully explained, Goehring has administratively exhausted her retaliation claim pertaining to allegations of age-related discrimination, Count IV of the Complaint. However, the plaintiff failed to administratively exhaust her sex-based retaliation claim, Count II, and accordingly it should be dismissed. Further, Goehring has properly exhausted her sex-discrimination claims centered on adverse privileges, failure-to-promote, adverse compensation, and adverse terms and conditions. The Bank does not contest that Goehring has properly exhausted her discharge claim. Plaintiff has also properly exhausted her age-based discrimination claim centered on adverse terms and conditions as well as discharge (which the defendant does not dispute). However, Goehring has *not* administratively exhausted her age-based discrimination claim centered on adverse compensation. Because of this, Goehring's age-based discrimination claim to the extent it relies on adverse compensation should be dismissed. And, because plaintiff has presented sufficient indicia to support her adverse terms and conditions claims, which were exhausted below, for both sex and age-based adverse terms and conditions charges, they also withstand defendant's additional arguments to dispose of these two claims. Finally, the plaintiff has adequately pleaded – when taken as true – sufficient conduct to be considered adverse employment actions.

Ms. Goehring also cannot amend her charge to include the sex-based retaliation claim, or add an adverse compensation claim to the age-based discrimination count. The plaintiff's sex discrimination claim (Count I) may proceed in full, Count II should be

28

dismissed in its entirety, Count III (age discrimination) remains for charges centered around adverse terms and conditions as well as discharge, but *not* concerning adverse compensation, and Count IV may proceed in full.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED, AS FOLLOWS:

1. Plaintiff's sex-based retaliation claim, Count II, is dismissed.

2. Defendant's motion to dismiss plaintiff's age-based retaliation claim, Count IV, is denied.

3. Defendant's motion to dismiss plaintiff's sex-based discrimination claims, under Count I, as alleged concerning theories of liability pertaining to adverse terms and conditions of employment, adverse privileges, failure-to-promote, and adverse compensation, is denied.

4. Defendant's motion to dismiss plaintiff's age-based discrimination claim, under Count III, as alleged concerning a theory of liability pertaining to adverse terms and conditions of employment, is denied.

5. Defendant's motion to dismiss plaintiff's age-based discrimination claim, Count III, as alleged so far as it concerns a theory of liability pertaining to adverse compensation, is granted.

6. Defendant's motion to dismiss plaintiff's sex and age-based discrimination claims, Counts I and III, so far as they rest on charges of adverse employment actions, is denied.

DATED this 21st day of February, 2022

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge